# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Xiaowei Liu, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:25-cv-15356 |
| v. | ) | |
| | ) | Dist. Judge Mary M. Rowland |
| The Defendants Identified on Schedule A, | ) | |
| | ) | Mag. Judge Albert Berry, III |
| | ) | |
| Defendants. | ) | |

### Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

**NOW COME** certain defendants[1] ("Defendants"), by and through their undersigned counsel, and

in opposition to Plaintiff's motion for preliminary injunction [Dkt. 28] argue as follows:

---

[1] betty li, Denneyas (aka Klaudio), Diventurs (aka Finchiger), Kotfiler, Original MJW, pattobold (aka Depriket), Radarga, Riser Treasure, S Wisdom HF, Sarah Zou, Sevenbor, Special Point, Unicepet, WChiho Q, wesley Hu, Xieheng, zara lei

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| **I.** | | Introduction | 1 |
| **II.** | | Argument | 1 |
| | **a.** | Legal Standard | 1 |
| | **b.** | The preliminary injunction should be denied for Defendants because Plaintiff cannot establish this Court's personal jurisdiction over them. | 2 |
| | | **i.** Defendants are not subject to general jurisdiction in Illinois. | 2 |
| | | **ii.** Defendants are not subject to this Court's specific personal jurisdiction. | 3 |
| | | **1.** Defendants have not purposefully directed their allegedly-infringing activities at Illinois or purposefully availed themselves of the privilege of conducting business in Illinois. | 4 |
| | | **2.** Plaintiff's alleged injury does not arise out of Defendants' activities in Illinois. | 10 |
| | | **3.** This Court's exercise of personal jurisdiction over Defendants does not comport with fair play and substantial justice. | 11 |
| | **c.** | Plaintiff cannot show a likelihood of success on the merits because the '963 is vulnerable to being invalidated. | 13 |
| | **d.** | The requested asset restraint should be denied in its entirety, or, at a minimum, limited to the amount that may possibly be recovered through an equitable accounting of Defendants' profits from sales of the accused products. | 18 |
| **III.** | | Conclusion | 24 |

**Cases**

Abbott Lab'ys v. Sandoz, Inc., 500 F. Supp. 2d 807, 817 (N.D. Ill. 2007)................................18

Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 802 (7th Cir. 2014) .4, 14

Altana Pharma AG v. Teva Pharms. USA, Inc., 566 F.3d 999, 1005-06 (Fed. Cir. 2009) ...................18

Am. Bridal & Prom Indus. Ass'n, Inc. v. The Partnerships & Unincorporated Associations Identified on Schedule A, 192 F. Supp. 3d 924, 930 (N.D. Ill. 2016) ..............................................2, 8

Am. Can Co. v. Mansukhani, 742 F.2d 314, 321-22 (7th Cir. 1984) ...........................................2

Antsy Labs, LLC v. Individuals, et al., 2022 WL 17176498 at *4 (N.D. Ill. Nov. 23, 2022) ...............26

Art Akiane LLC v. Mardel, Inc., 2021 WL 3269837 (N.D. Ill. July 30, 2021).................................16

Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 115 (1987).........................................17

B.D. by & through Myer v. Samsung SDI Co., 91 F.4th 856, 863 (7th Cir. 2024) .............................14

Campbell Soup Co. v. Gamon Plus, Inc., 10 F.4th 1268, 1275 (Fed. Cir. 2021)................................19

Celine SA v. Partnerships & Unincorporated Associations Identified in Schedule "A", 2025 WL 2591351 at *4 (N.D. Ill. Sept. 8, 2025).........................................................................29

Commodity Fut. Trading Comm. v. Lake Shore Asset Mgmt. Ltd., 496 F.3d 769, 772 (7th Cir. 2007) ............................................................................................................................ 1, 24

Conti-Bros, Inc. v. The P'Ships, et al., No. 21-cv-02352 Dkt. 51 (N.D. Ill. Aug. 13, 2021) ................7

CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002) ..............................................24

Curry v. Rev. Labs., LLC, 949 F.3d 385, 398 (7th Cir. 2020)..................................................4

Daimler AG v. Bauman, 134 S. Ct. 746, 749 (2014) .............................................................3

Deckers Outdoor Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule A, 2013 WL 12314399 at *2 (N.D. Ill. Oct. 31, 2013)......................................................................24

Eicher Motors Ltd. v. Individuals Identified on Schedule A Hereto, 2022 WL 3081869 at *3 (N.D. Ill. Aug. 3, 2022) ..............................................................................................................25

Expeditee LLC v. Entities Listed on Exhibit 1, 2022 WL 1556381 (N.D. Ill. May 17, 2022) ...............8

F.T.C. v. Bishop, 425 F. App'x 796, 798 (11th Cir. 2011) ....................................................29

F.T.C. v. Febre, 128 F.3d 530, 535 (7th Cir. 1997) ...........................................................27

F.T.C. v. Trudeau, 579 F.3d 754, 773 (7th Cir. 2009) ........................................................27

Felland v. Clifton, 682 F.3d 665, 674 (7th Cir. 2012) ........................................................4

Gao v. P'ships & Unincorporated Assocs. Identified on Schedule "A", 2022 WL 1028926, at *4 (N.D. Ill. Apr. 4, 2022) ...........................................................................................19

General Tools & Instruments LLC v. The P'Ships, et al., No. 20-cv-1036 Dkt. 167 p. 6 (N.D. Ill. May 17, 2021).........................................................................................................6

Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd., 2022 WL 2232517 (Fed. Cir. June 22, 2022)..............................................................................................................................21

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 930 n. 6 (2011) ............................14

Grupo Mexicano de Dessarrolo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999) .............................24

High Point Design LLC v. Buyers Direct, Inc., 730 F.3d 1301, 1311 (Fed. Cir. 2013).........................20

Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 198 (3d Cir. 1990) .....................................28

Illinois v. Hemi Grp. LLC, 622 F.3d 754, 758 (7th Cir. 2010)...................................................9

Innovation Indus., LLC v. Partnerships Identified on Schedule A, 2025 WL 2996794 at *4 (N.D. Ill. Oct. 24, 2025)...................................................................................................26

Jones v. Progress Ind., Inc., 163 F. Supp. 824, 826, 119 USPQ 92 (D. R.I. 1958) ...........................21

Juul Labs, Inc. v. 4X PODS., 439 F. Supp. 3d 341, 358-59 (D.N.J. 2020) ...................................30

Kipp v. Ski Enter. Corp. of Wisc., 783 F.3d 695, 699 (7th Cir. 2015)...........................................3

L-Acoustics v. Se7ven Sounds Music, Inc., 2023 WL 2931756 at *3 (M.D. Fla. Mar. 28, 2023) ........29

Lexington Ins. Co. v. Zurich Ins. (Taiwan) Ltd., 2017 WL 6550480, at *7 (W.D. Wis. Dec. 21, 2017)

............................................................................................................................................15
LKQ Corp. v. Gen. Motors Co., 2025 WL 1795213 at *4 (N.D. Ill. June 30, 2025) ............................22
Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) .............................................................................1
Mercis, B.V. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated
    Associations Identified on Schedule A Hereto, 2024 WL 5440025 (N.D. Ill. Nov. 18, 2024)........12
MRC Innovations, Inc. v. Hunter Mfg., LLP, 747 F.3d 1326, 1333 (Fed. Cir. 2014) .........................21
MSM Design & Eng'g LLC v. P'ships & Unincorporated Assocs. Identified in Schedule "A", 2021
    WL 3187706, at *3 (N.D. Ill. July 28, 2021) .......................................................................... 7, 11
N. Grain Mktg., LLC v. Greving, 743 F.3d 487, 496 (7th Cir. 2014) ...............................................4
NBA Properties, Inc. v. HANWJH, 46 F.4th 614, 619 (7th Cir. 2022) .............................................9
Neutral Tandem, Inc. v. Peerless Network, LLC, 2010 WL 11537593 at *4 (N.D. Ill. Mar. 30, 2010)
    ............................................................................................................................................17
NexLearn, LLC v. Allen Interactions, Inc., 859 F.3d 1371 (Fed. Cir. 2017) ...................................12
NS, Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A", 2025 WL
    2522770 at *2 (N.D. Ill. Sept. 2, 2025)................................................................................28
Ouyenic Ltd. v. ALUCKY et al., No. 20-cv-03490 Dkt. 134 (N.D. Ill. May 14, 2021) .......................7
Pit Viper, LLC v. Xi'an Jiaye Tengda Trading Co., 2024 WL 5039888 (N.D. Ill. Dec. 9, 2024) .........14
Rubik's Brand, Ltd. v. P'ships & Unincorporated Assocs. Identified on Schedule A, 2021 WL
    825668 at *3 (N.D. Ill. Mar. 4, 2021)..............................................................................passim
Savis, Inc. v. Cardenas, 2018 WL 5279311 at *4 (N.D. Ill. Oct. 24, 2018) .....................................2
Sealy Tech., LLC v. SSB Mfg. Co., 825 F. App'x 801, 807 (Fed. Cir. 2020) ...................................23
SHEN ZHEN WO NUO DE ZHI NENG JI SHU YOU XIAN GONG SI v. The Partnerships et
    al., 22-cv-01203 Dkt. 117 (N.D. Ill. March 29, 2024).......................................................11
SHENZHEN DEJIAYUN NETWORK TECHNOLOGY CO., LTD., v. The Partnerships et al.,
    21-cv-06607 Dkt. 143 (N.D. Ill. Feb. 2, 2024) ................................................................ 7, 10
Shrum v. Big Lots Stores, Inc., 2014 WL 6888446, at *4 (C.D. Ill. Dec. 8, 2014) ............................13
Skechers U.S.A., Inc. II v. Partnerships & Unincorporated Associations, 2025 WL 1455801 at *3
    (N.D. Ill. Mar. 10, 2025) ..............................................................................................31
Smith v. Foster, 2016 WL 2593957 (E.D. Wis. May 5, 2016) ........................................................2
Sun Chenyan v. P'ships & Unincorporated Assocs. Identified on Schedule "A", 2021 WL 1812888
    at *5 (N.D. Ill. May 6, 2021) ........................................................................................6
Sun v. Partnerships & Unincorporated Associations Identified on Schedule A, 2025 WL 712591 at
    *3 (N.D. Ill. Mar. 5, 2025) ...........................................................................................12
Sunoco P'ship Mktg. & Terminals L.P. v. U.S. Venture, Inc., 436 F. Supp. 3d 1099 (N.D. Ill. 2020)
    ............................................................................................................................................19
Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010) ................................................................2
Techtronic Indus. Co. v. Chervon Holdings, Ltd., 395 F. Supp. 2d 720, 729 (N.D. Ill. 2005)...........17
tinyBuild, LLC v. The P'ships et al., 24-cv-02413 Dkt. 26 (N.D. Ill. May 7, 2024) .........................27
TV Tokyo Corporation v. The Individuals et al., 23-cv-03091 Dkt. 76 (N.D. Ill. Oct. 5, 2023).........10
uBID, Inc. v. GoDaddy Grp., Inc., 623 F.3d 421, 433 (7th Cir. 2010) ...........................................16
UBISOFT ENTERTAINMENT et al. v. The Individuals et al. 23-cv-14536 Dkt. 88 (N.D. Ill. Feb
    8, 2024)......................................................................................................................11

## I.    Introduction

Plaintiff filed its Complaint on December 18, 2025, alleging that Defendants committed design patent infringement of U.S. Design Patent No. D1,090,963 (the " '963 Patent"). [Dkt. 1]. On December 31, 2025, Plaintiff filed their motion for entry of a temporary restraining order, which this Court granted without opposition on January 5, 2026. [Dkts. 9 and 13]. Plaintiff filed its motion for preliminary injunction on January 14, 2026, which Defendants oppose because this court does not have personal jurisdiction over Defendants, because Plaintiff has not shown a likelihood of success on the merits, and because the scope of the asset restraint requested by Plaintiff's motion is grossly overbroad.

## II.    Argument

### a.   Legal Standard

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  Further, the preliminary injunction should also be tailored to the violation.  Commodity Fut. Trading Comm. v. Lake Shore Asset Mgmt. Ltd., 496 F.3d 769, 772 (7th Cir. 2007).  In order to properly receive a preliminary injunction, Plaintiff must have demonstrated by a clear showing that "(1) the threat of irreparable harm for which there is no adequate remedy at law; (2) that the threatened injury to plaintiff outweighs the harm an injunction might inflict on the defendant; (3) that the plaintiff has a reasonable likelihood of success on the merits; and (4) that the issuance of a preliminary injunction would not disserve the public interest." Am. Can Co. v. Mansukhani, 742 F.2d 314, 321-22 (7th Cir. 1984), *citing*, In re Uranium Antitrust Litigation, 617 F.2d 1248, 1261 (7th Cir. 1980).  The movant "bears the burden of persuasion with regard to each factor in the preliminary injunction relief analysis" and if it "fails to meet just one of the prerequisites for a preliminary injunction, the injunction must be denied."  Smith v. Foster, 2016

1

WL 2593957 (E.D. Wis. May 5, 2016), *quoting*, Cox v. City of Chicago, 868 F.2d 217, 219-23 (7th Cir. 1989). Moreover, for a "preliminary injunction order to be valid, the issuing Court must have personal jurisdiction over the defendants." Am. Bridal & Prom Indus. Ass'n, Inc. v. The Partnerships & Unincorporated Associations Identified on Schedule A, 192 F. Supp. 3d 924, 930 (N.D. Ill. 2016).

   **b. The preliminary injunction should be denied for Defendants because Plaintiff cannot establish this Court's personal jurisdiction over them.**

   Without personal jurisdiction, this court cannot bind a party to a preliminary injunction. Advanced Tactical Ordnance Sys., LLC, 751 F.3d 796 ("In order for the district court's preliminary injunction to be valid, that court had to have personal jurisdiction over the defendant."); Savis, Inc. v. Cardenas, 2018 WL 5279311 at *4 (N.D. Ill. Oct. 24, 2018) ("the court is powerless to issue an injunction binding [defendant] if it does not have personal jurisdiction over him."). Plaintiff has the burden of establishing personal jurisdiction over a defendant. Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010). Here, sufficient minimum contacts do not exist to support this Court's exercise of either general or specific personal jurisdiction over Defendants, accordingly this Court should deny the preliminary injunction against Defendant and dismiss them from the lawsuit. Matlin v. Spin Master Corp., 921 F.3d 701, 707 (7th Cir. 2019) (upholding a dismissal under Rule 12(b)(2) where the defendant's alleged conduct never specifically targeted the state of Illinois or the judicial district).

   i.   Defendants are not subject to general jurisdiction in Illinois.

   General jurisdiction requires a foreign corporation defendant to "have affiliations with the [forum] State [which] are so continuous and systematic as to render [the defendant] essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 749 (2014). General jurisdiction over Defendant will exist only where their affiliation with Illinois is "so constant and pervasive as to

render it essentially at home" here. This is a fairly high standard requiring a great amount of contacts. Jamik, Inc. v. Days Inn of Mount Laurel, 74 F. Supp. 2d 818, 822 (N.D. Ill. 1999). Here, Plaintiff has not pled facts establishing general jurisdiction over Defendants, nor could they as Defendants are Chinese proprietors with principal places of business in the Peoples' Republic of China who have never owed, leased, or utilized an office in Illinois, never advertised, held a telephone listing, or maintained a bank account in Illinois, nor have Defendants had any agents, employees, or contractors in Illinois. Declaration of Haifang Qu at ¶ 3. Plaintiff also does not allege any facts establishing any pervasive or otherwise constant affiliation with Illinois and relies almost solely the fact that Defendants' storefronts are accessible in Illinois to show sufficient contacts, however this is insufficient to establish general jurisdiction. Kipp v. Ski Enter. Corp. of Wisc., 783 F.3d 695, 699 (7th Cir. 2015) (holding that maintaining a public website, by itself, is insufficient to establish general jurisdiction). Accordingly, this Court does not have general personal jurisdiction over Defendants.

ii.    Defendants are not subject to this Court's specific personal jurisdiction.

This Court also does not have specific personal jurisdiction over Defendants, which generally requires that "(1) the defendant…purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state"; (2) the plaintiff's injury stemmed from the "defendant's forum-related activities"; and (3) the exercise of personal jurisdiction "comport[s] with traditional notions of fair play and substantial justice." Felland v. Clifton, 682 F.3d 665, 674 (7th Cir. 2012); Guaranteed Rate, Inc. v. Conn, 264 F. Supp. 3d 909, 916 (N.D. Ill. 2017). Only after a court determines that a defendant has sufficient "minimum contacts" with the forum State will the Court look to whether subjecting the defendant to the court's personal jurisdiction nevertheless "offends traditional notions of fair play and substantial justice." N. Grain Mktg., LLC v. Greving, 743 F.3d 487, 496 (7th Cir. 2014), citing, Int'l Shoe, 326

3

U.S. at 316 (internal quotes omitted). There is no special jurisdictional test in the Seventh Circuit for internet-based cases like the instant case. *See*, <u>Curry v. Rev. Labs., LLC</u>, 949 F.3d 385, 398 (7th Cir. 2020). However, there is no specific jurisdiction where Defendant's contacts with the forum state are "entirely fortuitous." <u>Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.</u>, 751 F.3d 796, 802 (7th Cir. 2014), as corrected (May 12, 2014) (answering "no" to the question "has [defendant] purposefully exploited the [Indiana] market" beyond simply operating an interactive website accessible in the forum state and sending emails to people who may happen to live there?"); *See*, <u>Rubik's Brand, Ltd. v. P'ships & Unincorporated Assocs. Identified on Schedule A</u>, 2021 WL 825668 at *3 (N.D. Ill. Mar. 4, 2021) ("[D]isplaying products online that are shippable to Illinois amounts to nothing more than maintaining an interactive website that is accessible in Illinois.); *Cf.*, <u>Illinois v. Hemi Group</u>, 622 F.3d 754, 758 (7th Cir. 2010).

1. *Defendants have not purposefully directed their allegedly-infringing activities at Illinois or purposefully availed themselves of the privilege of conducting business in Illinois.*

To establish specific personal jurisdiction, Plaintiff alleges that each Defendant "has targeted sales to Illinois residents by setting up and operating e-commerce stores on online platforms" and alleges, on information and belief, that each Defendant "has sold products using Plaintiff's patented design to residents of Illinois and has wrongfully caused Plaintiff substantial injury in the State of Illinois." [Dkt. 1 at ¶ 4-5]. Plaintiff's characterization of Defendants' alleged activities is exaggerated, and Defendants did not purposefully direct their accused activity toward Illinois and did not sell or ship a single accused product to Illinois or this judicial district. Qu Decl. at ¶ 4, Exhibit A. Accordingly, Plaintiff's allegations fall far short of: (i) demonstrating that Defendants "availed itself of the privilege of conducting business in Illinois"; or (ii) how Defendants' unadvertised online ecommerce storefronts are "purposefully directed" at Illinois.

Here, Defendants' online e-commerce storefronts were accessible in Illinois, as well as

everywhere else with an internet connection, however, this fact alone is insufficient to satisfy the

purposeful availment requirement and the Seventh Circuit has made clear that "[b]eyond simply

operating an interactive website that is accessible from the forum state, a defendant must in some

way *target* the forum state's market. If the defendant merely operates a website, even a 'highly

interactive' website, that is accessible from, but does not target, the forum state, then the defendant

may not be haled into court in that state without offending the Constitution." be2 LLC v. Ivanov,

642 F.3d 555, 558-59 (7th Cir. 2011) (evidence that 20 Illinois residents had opened accounts on the

defendant's interactive website inadequate to support personal jurisdiction); Mobile

Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A., 623 F.3d 440,

446 (7th Cir. 2010) (plaintiff could not establish the defendant had sufficient contacts with Illinois

"simply by showing that the defendant maintained a website accessible to residents of the forum

state and alleging that the defendant caused harm through that website"); Sun Chenyan v. P'ships &

Unincorporated Assocs. Identified on Schedule "A", 2021 WL 1812888 at *5 (N.D. Ill. May 6, 2021)

(J. Kendall) ("Finding specific personal jurisdiction here would likely give rise to universal personal

jurisdiction because users from across the country, except those from a handful of places, could

purchase from the eBay Stores."); General Tools & Instruments LLC v. The P'Ships, et al., No. 20-

cv-1036 Dkt. 167 p. 6 (N.D. Ill. May 17, 2021) (J. Alonso) (vacating default judgment, noting

"Defendants put forth evidence that they never advertised or marketed products to Illinois

customers and never shipped infringing products to Illinois.); Rubiks Brand (granting motion to

dismiss for lack of personal jurisdiction, noting "That an Illinoisan might someday find Yoyoly's

website and decide to purchase a counterfeit Rubik's product from the site simply does not suffice

to vest the Court with personal jurisdiction over Yoyoly"); MSM Design & Eng'g LLC v. P'ships &

Unincorporated Assocs. Identified in Schedule "A", 2021 WL 3187706, at *3 (N.D. Ill. July 28,

2021) (J. Kness); Conti-Bros, Inc. v. The P'Ships, et al., No. 21-cv-02352 Dkt. 51 (N.D. Ill. Aug. 13,

2021) (J. Feinerman); <u>Ouyenic Ltd. v. ALUCKY et al.</u>, No. 20-cv-03490 Dkt. 134 (N.D. Ill. May 14, 2021) (J. Gettleman) (vacating default judgment and dismissing defendants whose single sale into Illinois was to Plaintiff's investigator). Following, this Court has noted that evidence of "simply populating a potential [Illinois] shipping address into a website" without an actual sale into the forum state is insufficient to establish personal jurisdiction because ruling otherwise would mean that "the Seventh Circuit's admonition that a district court should not exercise personal jurisdiction over a defendant simply because they own or operate an interactive website that is accessible in the forum *would have no teeth*." <u>Shenzhen Dejiyun Network Tech. Co. Ltd. v. The P'ships et al.</u>, 21-cv-06607 Dkt. 143 (N.D. Ill. Feb. 2, 2024) (emphasis added); <u>Rubik's Brand</u> 2021 WL 825668 at *3 ("Even accepting Rubik's premise that the screenshot shows that an order ***could*** be placed by an Illinoisan, displaying products online that are shippable to Illinois amounts to nothing more than maintaining an interactive website that is accessible in Illinois. That alone cannot confer personal jurisdiction.") (emphasis in original); <u>Expeditee LLC v. Entities Listed on Exhibit 1</u>, 2022 WL 1556381 at *4 (N.D. Ill. May 17, 2022) ("displaying products online that are shippable to Illinois amounts to nothing more than maintaining an interactive website that is accessible in Illinois" and is insufficient to confer jurisdiction) (internal citations omitted); <u>Am. Bridal & Prom Indus. Ass'n, Inc. v. The Partnerships & Unincorporated Associations Identified on Schedule A</u>, 192 F. Supp. 3d 924, 934 (N.D. Ill. 2016) ("Plaintiffs cast an extremely wide net, naming 3,343 defendants who have no connection to this state, based upon the erroneous assumption that simply alleging the existence of purported counterfeiting via an interactive website is enough, by itself, to confer personal jurisdiction. It is not.").

In <u>NBA Properties,</u> the 7th Circuit recognized that "specific personal jurisdiction is not established merely because the retailer's website is available in the forum," but rather, for jurisdiction to be proper, "it is necessary that the retailer stand ready and willing to do business with residents of

6

the forum *and then knowingly* do business with those residents." NBA Properties, Inc. v. HANWJH, 46 F.4th 614, 619 (7th Cir. 2022) (emphasis added); Illinois v. Hemi Grp. LLC, 622 F.3d 754, 758 (7th Cir. 2010); MSM Design, 2021 WL 3187706 at *2 (N.D. Ill. July 28, 2021). The NBA Properties Court found that the defendant who operated a website accessible in the forum knowingly did business with Illinois residents because they "filled [an] order, *intentionally shipping an infringing product to the customer's designated Illinois address.*" Id. at 624 (emphasis added). Accordingly, the court found that the defendant "knew it could be subject to the jurisdiction of Illinois when it shipped a counterfeit product to the forum." Id. at 625.  Here, unlike in NBA Properties, Defendants could not have foreseen that they would be haled into Illinois court, as Defendants did not "knowingly do business" with Illinois residents and never sold or shipped the accused product to Illinois. Qu Decl. at ¶ 4, Exhibit A. NBA Properties, 46 F.4th at 624 ("Here, unlike Matlin, we are faced with a situation where an infringing product was ***shipped*** to Illinois…The defendants in Matlin could not have foreseen that they would be haled into court in Illinois…[NBA Properties Defendant] knew it could be subject to the jurisdiction of Illinois when it shipped a counterfeit product to the forum.") (emphasis added); *Cf.*, Curry v. Revolution Lab'ys, LLC, 949 F.3d 385, 400 (7th Cir. 2020) (finding that Defendant's 767 sales of the infringing product to Illinois residents provided "solid evidence" that Defendant "purposely exploited the Illinois market" and noting that "[t]hese sales certainly distinguish [Defendant] from the defendant that merely operates a website … that is accessible from, but does not target, the forum state.").

Rubik's Brand is very analogous and instructive to the instant case.  In Rubik's Brand, this Court determined in a mechanically-identical case that it did not have personal jurisdiction where the defendant averred it made no sale to Illinois residents and Plaintiff sole basis was a screenshot of not even a sale, but "at most…the possibility that a sale could be made in Illinois."  Id. 2021 WL 825668 at *4.  The Rubik's Brand Court further distinguished the case from Hemi based on the Hemi

defendant's 300 sales to Illinois and noted that "displaying products online that are shippable to Illinois" but "[making] no sales to Illinois residents" is insufficient to vest a court with personal jurisdiction. Id. at *3-*4; TV Tokyo Corporation v. The Individuals et al., 23-cv-03091 Dkt. 76 (N.D. Ill. Oct. 5, 2023) (R. Pallmeyer) (granting motion to dismiss for lack of personal jurisdiction and distinguishing the case from Hemi and NBA Properties, because plaintiff "has not presented evidence that Defendant knowingly did business with Illinois residents" where defendant's only sale of the allegedly infringing product from their interactive website was to Louisiana, not Illinois); SHENZHEN DEJIAYUN NETWORK TECHNOLOGY CO., LTD., 21-cv-06607 Dkt. 143 (N.D. Ill. Feb. 2, 2024) (J. Daniel) (finding no personal jurisdiction over defendants who operated a Walmart storefront but made no sales of the allegedly infringing product into Illinois, and noting that "*something more than the ability to insert a shipping address on an online retail website is needed to establish personal jurisdiction.*") (emphasis added); UBISOFT ENTERTAINMENT et al. v. The Individuals et al. 23-cv-14536 Dkt. 88 (N.D. Ill. Feb 8, 2024) (E. Bucklo) (declining to find jurisdiction based on "a screenshot suggesting that accused products were available for purchase and shipment to Illinois" and granting motion to dismiss for lack of personal jurisdiction where Defendants submitted a declaration stating that they sold no accused products to Illinois); SHEN ZHEN WO NUO DE ZHI NENG JI SHU YOU XIAN GONG SI v. The Partnerships et al., 22-cv-01203 Dkt. 117 (N.D. Ill. March 29, 2024) (F. Valderrama) (distinguishing case from NBA Properties and Curry and noting that "[a]n online retailer's offer to sell without an actual sale related to the alleged unlawful activity does not support a finding of specific jurisdiction."); MSM Design & Eng'g LLC, 2021 WL 3187706 at *3 (finding no purposeful direction where Defendant operated a fully interactive WISH.com storefront and distinguishing the case from Hemi and Curry because defendant "never shipped any product to this forum."). Plaintiff cannot support the necessary contention that Defendants "directed" anything to Illinois, much less sufficient activity to warrant this Court's

8

specific personal jurisdiction. be2 LLC, 642 F.3d at 559. Defendants did not sell or ship a single allegedly-infringing product to Illinois and the fact that an "Illinoisian might someday find [Defendants'] website[s] and decide to purchase a [product] from the site simply does not suffice to vest the Court with personal jurisdiction over [Defendants]." Rubik's Brand, Ltd., 2021 WL 825668 at *4; Matlin, 921 F.3d at 707 (finding no personal jurisdiction where defendant's only sale of the relevant product to the forum occurred after the suit was filed and noting that "*we cannot allow plaintiffs to base jurisdiction on a contact that did not exist at the time they filed suit.*") (emphasis added); Mercis, B.V. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto, 2024 WL 5440025 at *4 (N.D. Ill. Nov. 18, 2024) ("The fact that an online retailer stood ready to ship a product to the forum state, as shown by screenshot evidence that an order had been placed, is not enough, if the order was never ultimately paid for and shipped."); Sun v. Partnerships & Unincorporated Associations Identified on Schedule A, 2025 WL 712591 at *3 (N.D. Ill. Mar. 5, 2025) ("[Plaintiff] has submitted a screenshot of [defendant]'s Walmart[.com] posting that seems to establish an Illinois consumer *could* place an order if he or she wanted. But this hypothetical falls short of establishing sufficient in-state contacts to confer jurisdiction."); *see also* NexLearn, LLC v. Allen Interactions, Inc., 859 F.3d 1371 (Fed. Cir. 2017) (noting that a webstore's "willingness to enter future transactions with out-of-state residents does not, without more, show purposeful availment of each *State in which it would, but has not yet,* provided or even offered a sale" and finding no personal jurisdiction where defendant operated an interactive storefront that offered shipped of the accused product to the forum state where "a [forum] resident *could* purchase" the accused product, because there was no evidence that such a sale to the forum had actually taken place) (emphasis added). With zero actual sales of the allegedly-infringing product to any residents of the state of Illinois, Plaintiff has failed to articulate how Defendants have purposefully availed themselves to the jurisdiction of Illinois, thus jurisdiction is improper.

2. *Plaintiff's alleged injury does not arise out of Defendants' activities in Illinois.*

Plaintiff does not substantively allege that Defendants acted at or in Illinois, and similarly cannot show that any damage Plaintiff may have endured was derived from the Defendants acts in Illinois. A court's specific personal jurisdiction is evaluated by reference to the particular conduct underlying the claims made in the lawsuit. N. Grain Mktg., 743 F.3d at 494, *citing*, Tamburo; *See*, Shrum v. Big Lots Stores, Inc., 2014 WL 6888446, at *4 (C.D. Ill. Dec. 8, 2014) (Only a defendant's contacts which "bear on the substantive legal dispute between the parties or relate to the operative facts of the case" are relevant, and none exist in the present case.). When analyzing specific personal jurisdiction, the "second element is crucial - and [a court] cannot simply aggregate all of a defendant's contacts with a state ... as evidence of the constitutionally-required minimum contacts." Matlin, 921 F.3d 701, 706 (7th Cir. 2019) (internal citations omitted). Rather, specific jurisdiction "must rest on the *litigation-specific* conduct of the defendant in the proposed forum state. The only sales that would be relevant are those that were related to [Defendant]'s allegedly unlawful activity." Advanced Tactical Ordnance Sys., 751 F.3d at 801; B.D. by & through Myer v. Samsung SDI Co., 91 F.4th 856, 863 (7th Cir. 2024) ([Plaintiff]'s contacts **selling batteries other than the [allegedly infringing] model to utilities in Indiana are unrelated to the alleged injury. These contacts do not arise out of or relate to the underlying suit. So, they cannot sustain specific personal jurisdiction**.") (emphasis added); Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 930 n. 6 (2011) ("even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."); Collectanea J. Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule A, 2024 WL 4604532 at *5 (N.D. Ill. Oct. 29, 2024) (rejecting argument that court has personal jurisdiction over defendant e-commerce business where they only sold non-accused goods to Illinois, because defendant's minimum contacts must be "suit-related" and "sales of non-accused goods do not relate to the specific claims at issue."); Pit

Viper, LLC v. Xi'an Jiaye Tengda Trading Co., 2024 WL 5039888 at *4 n.4 (N.D. Ill. Dec. 9, 2024) (rejecting argument that defendant's sales of other products from their e-commerce storefronts that were not alleged to have been infringing supports the exercise of personal jurisdiction). Here, Plaintiff does not allege that any of its "injuries" are related to Defendants' Illinois-specific actions, nor could they as Defendants have not sold or shipped a single allegedly-infringing product into Illinois or this Judicial District or taken any action to specifically target sales to Illinois consumers. Qu Decl. at ¶ 3-4, Exhibit A. At most, Defendants operated online stores that were accessible from Illinois; however, this level of accessibility is no different than in any other forum where a resident has internet access and is insufficient to give rise to personal jurisdiction. Matlin 921 F.3d at 706 ("[H]aving an 'interactive website' should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website it accessible."). Without any infringing Illinois sale in the current case, Plaintiff does not, and cannot, allege that its "injuries" are the result of a purchase transaction whereby allegedly-infringing product might *possibly* have been sent to an address in Illinois. Rubik's Brand, 2021 WL 825668 at *4. Again, it is not enough that some "Illinoisan might someday find [the defendant's] website and decide to purchase a counterfeit [] product" at some later date. Id. Accordingly, Plaintiff cannot show that any damage they may have endured was derived from the Defendants' acts in Illinois.

   3.   *This Court's exercise of personal jurisdiction over Defendants does not comport with fair play and*     *substantial justice.*

  Lastly, Plaintiff cannot show how subjecting Defendants to this Court's personal jurisdiction comports with fair play and substantial justice. In making this determination, the Court will consider: (i) the burden of a defendant of having to litigate in the forum; (ii) the interests of the forum; (iii) the plaintiff's interest in obtaining relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (v) the shared interest of the several

states in furthering fundamental substantive social policies. Lexington Ins. Co. v. Zurich Ins. (Taiwan) Ltd., 2017 WL 6550480, at *7 (W.D. Wis. Dec. 21, 2017); Felland, 682 F.3d at 677 (7th Cir. 2012). This factored "analysis does not provide crisp, bright lines for district courts and litigants," but generally the relationship among the defendant, the forum, and the litigation should be close enough to not offend due process. uBID, Inc. v. GoDaddy Grp., Inc., 623 F.3d 421, 433 (7th Cir. 2010). In the present case, Defendants would be significantly burdened with having to litigate the merits of the case in Chicago, Illinois, as Defendants are all based in China and conduct business in China, nearly 8,000 miles away. Qu Decl. at ¶ 3. Defendants have no offices, employees, or agents in Illinois, and Defendants would face considerable additional expenditures by having to remotely manage local counsel, conduct discovery including depositions[2], and proceed through trial. Id. Further, Illinois' interest in adjudicating the dispute tips against exercising personal jurisdiction, as Plaintiff's claims are based on federal patent infringement violations. [Dkt. 1]. Litigating in this forum would not serve the interstate judicial system's interest in obtaining the most efficient resolution of the controversy as so little - if anything - happened here: evidence supporting Plaintiff's claims would theoretically come from individuals with no ties to Illinois and/or from records of a company located out of state. Art Akiane LLC v. Mardel, Inc., 2021 WL 3269837 (N.D. Ill. July 30, 2021) ("Where the only contacts between a forum and the defendant are contacts manufactured by the plaintiff, it cannot be said that the exercise of personal jurisdiction comport[s] with traditional notions of fair play and substantial justice.") (internal citations omitted). Defendants are all Chinese proprietors and the nations' shared interest is "best served by…an unwillingness to

---

[2] "China has indicated that taking depositions, whether voluntary or compelled, and obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority under the Hague Evidence Convention." U.S. Department of State - Bureau of Consular Affairs, available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html; Declarations Notifications Reservations Articles: 4,16,23,33 People's Republic of China, available at https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=493&disp=resdn

find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 115 (1987).

On review, no factor tips in favor of exercising personal jurisdiction; rather, all factors tip against exercising personal jurisdiction, and thus this court exercising personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice. Lexington, 2017 WL 6550480, at *8; Felland, 682 F.3d at 677. Given this Court lacks personal jurisdiction over Defendants, Plaintiff's request for preliminary injunction should be denied for Defendants and the Complaint against Defendants should be dismissed pursuant to Rule 12(b)(2).

**c. Plaintiff cannot show a likelihood of success on the merits because the '963 is vulnerable to being invalidated.**

Although a patent is presumed valid under federal law, "that presumption does not relieve the moving party in the preliminary injunction context from carrying its normal burden of establishing its reasonable likelihood of prevailing" on the merits. Techtronic Indus. Co. v. Chervon Holdings, Ltd., 395 F. Supp. 2d 720, 729 (N.D. Ill. 2005). If the alleged infringer "raises a substantial question of invalidity, the preliminary injunction should not issue." Neutral Tandem, Inc. v. Peerless Network, LLC, 2010 WL 11537593 at *4 (N.D. Ill. Mar. 30, 2010), *citing*, Altana Pharma AG v. Teva Pharms. USA, Inc., 566 F.3d 999, 1005-06 (Fed. Cir. 2009). To meet this burden, the alleged infringer must only show that the patent is "vulnerable", which requires less proof than a clear and convincing showing necessary to establish invalidity itself. Id.; Abbott Lab'ys v. Sandoz, Inc., 500 F. Supp. 2d 807, 817 (N.D. Ill. 2007), *aff'd*, 544 F.3d 1341 (Fed. Cir. 2008) ("Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial. The alleged infringer must identify at least some persuasive evidence of invalidity at this early stage to overcome the presumption of validity."). If the alleged infringer shows that the patent is "vulnerable" the burden shifts back to the patentee "to show that the defense lacks substantial merit." Id.

Here, Defendants have identified numerous pieces of prior art that raise substantial questions regarding the validity of the '963 Patent and make the '963 Patent vulnerable to being invalidated as obvious. Section 103(a) precludes a patent's issuance when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a while would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). "Section 103 applies to design patents in much the same manner as it applies to utility patents." In re Haruna, 249 F.3d 1327, 1335 (Fed. Cir. 2001); In re Borden, 90 F.3d 1570, 1574 (Fed. Cir. 1996) ("Design patents are subject to the same conditions on patentability as utility patents, including the nonobviousness requirement of 35 U.S.C. § 103."); 35 U.S.C. § 171 ("The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."). "For design patents, the ultimate inquiry for obviousness is whether the claimed design would have been obvious [at the time of invention] to a designer of ordinary skill who designs articles of the type involved." Spigen Korea Co. v. Ultraproof, Inc., 955 F.3d 1379, 1383-84 (C.D. Cal. 2020) (internal quotations omitted).

Obviousness is a question of law based on the underlying factual inquiries including: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims, (3) the level of ordinary skill in the relevant art, and (4) any objective indicia of non–obviousness, such as commercial success, long felt need, and failure of others. Sunoco P'ship Mktg. & Terminals L.P. v. U.S. Venture, Inc., 436 F. Supp. 3d 1099 (N.D. Ill. 2020). In the design patent context, the Court addresses the first three factors by determining whether a designer of ordinary skill would have combined teachings of the prior art to create "the same overall visual appearance as the claimed design." Gao v. P'ships & Unincorporated Assocs. Identified on Schedule "A", 2022 WL 1028926, at *4 (N.D. Ill. Apr. 4, 2022). This requires a two-step inquiry. "First, before the trier of fact can combine prior art references, it must determine whether there exists a 'primary reference,' i.e., a

single reference that creates 'basically the same visual impression' as the claimed design." Id., *citing*, Campbell Soup Co. v. Gamon Plus, Inc., 10 F.4th 1268, 1275 (Fed. Cir. 2021). Second, if a primary reference exists, the trier of fact must determine whether, using secondary references, an ordinary designer would have modified the primary reference to create a design that has the same overall visual appearance as the claimed design. Id.; High Point Design LLC v. Buyers Direct, Inc., 730 F.3d 1301, 1311 (Fed. Cir. 2013) ("When assessing the potential obviousness of a design patent, a finder of fact employs two distinct steps: first, one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design; second, once this primary reference is found, other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design.") (internal citations omitted).

Included with this response are 3 (three) reference which demonstrate that the '963 Patent was very likely obvious upon its effective filing date of May 8, 2024.

- Reference 1: European Design No. 015052761-0001, Published: March 5, 2024: **Exhibit 1** - taken from the World Intellectual Property Organization (WIPO) Global Design Database[3] (Primary reference)

- Reference 2: Youtube video "Making cement wine bottle stoppers"[4] 3 seconds in, Published: June 13, 2023: **Exhibit 2**

- Reference 3: European Design No. 15027913-0001, Published: July 13, 2023: **Exhibit 3**

As shown in **Exhibit 4**, Reference 1 creates the same overall visual impression as the design claimed in the '963 Patent, with the only differences being: (1) the ribbed section does not stick out from the stopper as far (red circle in comparison between Figs. 2, 3, 4, and 5); (2) the inclusion of a power symbol on the top (blue circle in comparison between Fig. 6); and (3) the inclusion of a

---

[3] https://designdb.wipo.int/designdb/en/
[4] https://www.youtube.com/watch?v=uQrXnnlgbbc

power inlet on the bottom (yellow circle in comparison between Fig. 7). However, these very slight differences do not detract from the similarity of the claimed design and Reference 1 still creates "basically the same" overall visual impression as the design claimed in the '963 Patent as a whole, thus Reference 1 can serve as a primary reference. *See*, MRC Innovations, Inc. v. Hunter Mfg., LLP, 747 F.3d 1326, 1333 (Fed. Cir. 2014) (finding that design patent created "basically the same" overall visual impression as the prior art where both designs contained "the same overall shape, similar fabric, and ornamental surge stitching" and noting that "slight differences in the precise placement of the interlock fabric and the ornamental stitching does not defeat a claim of obviousness"); Jore Corp. v. Kouvato, Inc., 117 Fed.Appx. 761, 763 (Fed. Cir. 2005) (finding prior art drill bit to be a primary reference despite containing a smooth cylindrical shaft rather than the grooved hexagonal shaft of the claimed design); Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd., 2022 WL 2232517 (Fed. Cir. June 22, 2022) ("the district court properly considered [a particular trolley bag] to be a primary reference [even though it had] a different handle design and location, horizontal rods that differ in length and design, and a less rectangular shape"); In re Nalbandian, 661 F.2d 1214, 1217-18 (CCPA 1981) (finding tweezer design obvious in light of prior art reference that contained vertical rather than horizontal fluting and straight rather than curved pincers). If that weren't enough, the inclusion of the power symbol and power inlet in the claimed design are functional features and the addition of these features cannot preclude a finding that Reference 1 serves as primary reference. Jones v. Progress Ind., Inc., 163 F. Supp. 824, 826, 119 USPQ 92, 93 (D. R.I. 1958) ("[A] design claim to be patentable must also be ornamental; and functional features or forms cannot be relied upon to support its patentability."); MPEP 1504.03 ("hidden portions or functional features cannot be relied upon as a basis for patentability.").

Additionally, as further shown in Exhibit 4, References 2 and 3 disclose the design features of the '963 Patent that are missing from Reference 1, which renders the design claimed in the '963

16

Patent obvious. For example, Reference two discloses a wine stopper with a ribbed section with 6 ribs that is identical to the ribbed section in the claimed design (red circle in Exhibit 4 comparison of Figs. 2, 3, 4, and 5), and Reference 3 includes a lamp shade that is identical to the lamp shade in the claimed design. **Exhibit 4**. Moreover, since Reference 1 and 3 are wine stopper lamps with very similar designs and features and Reference 1 and 2 include wine stoppers with very similar designs and features, References 2 and 3, are "'so related [to primary References 1] that the appearance of certain ornamental features in one would suggest the application of those features to the other." MRC Innovations, Inc. v. Hunter Mfg., LLP, 747 F.3d 1326 (Fed. Cir. 2014) (internal citations omitted) "In other words, it is the mere similarity in appearance that itself provides the suggestion that one should apply certain features to another design." Id. (finding sufficient motivation to combine features from secondary references to primary references simply because all references were football jerseys for dogs); LKQ Corp. v. Gen. Motors Co., 2025 WL 1795213 at *4 (N.D. Ill. June 30, 2025) ("[I]n the context of demonstrating a motivation to combine primary and secondary references to reach a claimed design, the mere similarity in appearance between primary and secondary references itself provides the suggestion that one should apply certain features to another design and can demonstrate a motivation to combine.") (internal citations omitted); Sealy Tech., LLC v. SSB Mfg. Co., 825 F. App'x 801, 807 (Fed. Cir. 2020) (finding motivation to combine features of secondary references to primary reference simply because the primary and secondary references were both mattresses). In light of this similarity in appearance between Reference 1 and References 2 and 3, a designer of ordinary skill would look towards features in secondary References 2 and 3 for design inspiration and would be motivated to combine the ribbed section disclosed in Reference 2 to Reference 1 and combine the lamp shade from Reference 3 to Reference 1, since these features could be easily altered to give the design slightly different appearances. Accordingly, a designer of ordinary skill would be motivated to modify Reference 1 with the ribbed section and

lamp shade in References 2 and 3, to provide the same overall impression as the design claimed in the '963 Patent. Following, Plaintiff cannot show a likelihood of success on the merits because the '963 Patent is invalid as obvious, or at least vulnerable to being invalidated as obvious, and the preliminary injunction should be denied.

**d. The requested asset restraint should be denied in its entirety, or, at a minimum, limited to the amount that may possibly be recovered through an equitable accounting of Defendants' profits from sales of the accused products.**

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) ("preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (internal citations omitted). The preliminary injunction should also be tailored to the violation. Commodity Fut. Trading Comm. v. Lake Shore Asset Mgmt. Ltd., 496 F.3d 769, 772 (7th Cir. 2007). The Supreme Court has held that district courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages." Grupo Mexicano de Dessarrolo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999). This has been affirmed in the Seventh Circuit as well. See, CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002); See also, Micnerski v. Sheahan, 2002 WL 31415753, at *1 (N.D. Ill. Oct. 25 2002) ("federal district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed"). Prejudgment asset restraints, therefore, are limited to cases seeking equitable relief, where they are narrowly drawn and "limited only to what is reasonably necessary to secure the (future) equitable relief." Deckers Outdoor Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule A, 2013 WL 12314399 at *2 (N.D. Ill. Oct. 31, 2013); see also Animale Grp. Inc. v. Sunny's

Perfume Inc., 256 F. App'x 707, 708 (5th Cir. 2007), *quoting*, Deckert v. Independence Shares Corp., 311 U.S. 282, 289-91 (1940) (noting that Prejudgment asset restraints are limited to cases seeking equitable relief, where they are narrowly drawn "to sequester only those funds necessary to satisfy the potential judgment.").

Applying these principles, any prejudgment asset restraint should be limited to amounts that the plaintiff is reasonably likely to recover pursuant to an equitable accounting of profits in this case. 35 U.S.C. § 289; Deckers, 2013 WL 12314399, at *2 ("[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief. For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more."); Eicher Motors Ltd. v. Individuals Identified on Schedule A Hereto, 2022 WL 3081869 at *3 (N.D. Ill. Aug. 3, 2022) ("A preliminary asset freeze cannot be imposed to preserve [Plaintiff]'s ability to collect any judgment it later obtains."); Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995) (concluding that the "district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits" in a Lanham Act case); McCarthy on Trademarks and Unfair Competition § 30:40 (4th ed.) (the purpose of freezing assets is to preserve "security for plaintiff's future recovery on an accounting of the counterfeiter's profits.").

On the date Plaintiff's motion for entry of a TRO was filed and the TRO was entered, Plaintiff would have had little to no information of Defendants' sales of the identified, accused product, including revenues earned therefrom. However, this is almost certainly no longer the case and has not been since Plaintiff ostensibly received expedited discovery from the platforms, which, on information and belief, was ordered when this Court issued the TRO roughly a month ago. [Dkt. 13]. While the robustness of disclosures varies from platform to platform, in response to a TRO in

19

a typical Schedule A case, the platforms generally report the amount frozen in each Defendants'

account, as well as each Defendants' total revenue from sales of the accused products to Plaintiff,

and these total sale figures for the identified accused products represents the **maximum** equitable

relief Plaintiff could possibly recover via disgorgement of profits (assuming a 100% profit margin),

which is the only equitable remedy available for Plaintiff's design patent infringement claim. 35

U.S.C. § 289. *See* Innovation Indus., LLC v. Partnerships Identified on Schedule A, 2025 WL

2996794 at *4 (N.D. Ill. Oct. 24, 2025) ("evidence showing gross revenue can at least establish an

upper limit to a potential accounting of profits remedy, since gross revenue necessarily exceeds

profit."). Accordingly, because the amount of the "[maximum] profits is known, then the asset

freeze should apply only to that specific amount and no more." Antsy Labs, LLC v. Individuals, et

al., 2022 WL 17176498 at *4 (N.D. Ill. Nov. 23, 2022).

      The expedited discovery obtained by Plaintiff should have revealed that the amount frozen

in Defendants' accounts greatly exceeded Defendants' total revenue from sales of the accused

products and made it clear to Plaintiff that the large majority of the funds in Defendants' accounts

are not the proceeds from Defendants' sales of the of the accused products, but rather, the funds are

from the sales of other products sold by Defendants that are completely unrelated to this case, and

which Plaintiff has no equitable interest in. Critically, however, on information and belief, despite

Plaintiff now having this sales information of the accused product from expedited discovery and

knowledge that they have no equitable interest in the bulk of the funds in Defendants' accounts, the

asset restraint requested in Plaintiff's motion for preliminary injunction is not limited to Defendants'

revenue from sales of the accused product, but rather, Plaintiff's motion requests a blanket asset

freeze which, like the TRO, requests the freeze of "all funds in" Defendant's account. This is

improper, and, in order for Plaintiff to properly obtain the asset restraint requested in the

preliminary injunction, Plaintiff has the burden of showing that they had an equitable interest in the

funds sought to be frozen, meaning that the funds were a reasonable approximation of each defendants' profits from sales of the accused products. tinyBuild, LLC v. The P'ships et al., 24-cv-02413 Dkt. 26 (N.D. Ill. May 7, 2024) (noting that in a situation where the scope of the prejudgment asset restraint is challenged before the entry of a preliminary injunction, "before any burden shifts to the defendants, the plaintiff must establish that it is entitled to the relief sought"); Mazurek, 520 U.S. at 972 (A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."); F.T.C. v. Febre, 128 F.3d 530, 535 (7th Cir. 1997) (noting that to calculate the appropriate size of disgorgement of profits relief, "[t]he [Plaintiff] must show that its calculations reasonably approximated the amount of customers' net losses, and then the burden shifts to the defendants to show that those figures were inaccurate."); F.T.C. v. Trudeau, 579 F.3d 754, 773 (7th Cir. 2009) ("The [Plaintiff] bears the initial burden of establishing the baseline figure: a reasonable approximation of losses, gains, or some other measure the court finds appropriate. Then the burden shifts to the defendant to show that those figures were inaccurate."); See also S.E.C. v. ETS Payphones, Inc., 408 F.3d 727, 735 (11th Cir. 2005) (discussing asset freezes and finding that plaintiff bears the burden of showing the assets sought to be frozen represent a "reasonable approximation of [the] defendant's ill-gotten gains," and noting that the "power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing."); Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 198 (3d Cir. 1990) ("If a court imposes a preliminary injunction encumbering a defendant's assets in order to protect a potential future money judgment, the court must make some attempt reasonably to relate the value of the assets encumbered to the likely value of the expected judgment."); Awareness Ave. Jewelry LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A," 2023 WL 3568387 at *1 (M.D. Fla. May 19, 2023) ("While a court may order assets frozen to preserve its ability to award permanent equitable relief, the amount frozen must be limited to a

reasonable approximation of the amount potentially recoverable, *i.e.*, the amount derived from unlawful activity."). Plaintiff fails to meet this burden and, despite receiving expedited discovery from the platforms, Plaintiff has not limited the requested asset restraint to each Defendants' revenue from sales of the accused product - the **maximum** equitable monetary remedy to which Plaintiff might be entitled - and instead, on information and belief, Plaintiff has requested a grossly overbroad asset restraint freezing "all funds" in Defendants' accounts. Accordingly, the requested asset restraint should be denied in its entirety because of Plaintiff's failure to satisfy their burden of showing that the funds sought to be frozen represent "a reasonable approximation" of each Defendants' ill-gotten gains. NS, Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A", 2025 WL 2522770 at *2 (N.D. Ill. Sept. 2, 2025) ("Plaintiff asks this Court to prevent Defendants from transferring any assets out of their financial accounts, regardless of whether they bear some connection to the infringement at issue. Without any information about what percentage of the assets in Defendants' financial accounts is actually derived from sales of the infringing products in this case, Plaintiff's request poses too great a risk that Defendants (who may very well also sell non-infringing products) will be unfairly burdened. Thus, the Court terminates any asset freeze currently imposed on Defendants' financial accounts."); Celine SA v. Partnerships & Unincorporated Associations Identified in Schedule "A", 2025 WL 2591351 at *4 (N.D. Ill. Sept. 8, 2025) (same); tinyBuild, 24-cv-02413 Dkt. 26 (finding that Plaintiff had not met its burden of establishing that it was entitled to a prejudgment asset restraint on all funds in defendants accounts where Plaintiff had received expedited discovery from the platforms on defendants' sales and reducing prejudgment asset restraint to a number closer to the revenue amounts provided by the Amazon platform to Plaintiff); *see also* F.T.C. v. Bishop, 425 F. App'x 796, 798 (11th Cir. 2011) ("The district court abused its discretion by imposing too broad of an asset freeze without making any reasonable approximation of Defendant–Appellant's ill-gotten gains. Therefore, we remand this

case to the district court to determine whether the asset freeze corresponds with a reasonable approximation of Bishop's unjust enrichment, in accordance with equitable principles."); L-Acoustics v. Se7ven Sounds Music, Inc., 2023 WL 2931756 at *3 (M.D. Fla. Mar. 28, 2023) (denying plaintiff's request for an asset restraint in its entirety because plaintiff failed to satisfy their burden of providing "a reasonable approximation of defendant's ill-gotten gains" where Plaintiff attempted to freeze **all funds in defendants" operational bank account but failed to provide any evidence of "what percentage of funds in Defendants' account were derived from Defendants' [sale of the infringing products**].") (emphasis added); Juul Labs, Inc. v. 4X PODS., 439 F. Supp. 3d 341, 358-59 (D.N.J. 2020) (noting that "[Plaintiff] has the burden what profit it seeks to disgorge based on the claims asserted in its complaint" and denying request for asset freeze where plaintiff requested asset freeze of "all assets" in defendant's account but failed to meet their burden of establishing defendant's profits or show that all funds in defendant's accounts were from the sale of products which infringed plaintiff's trademark).

Defendants have also provided documentary proof, including sales records of the accused products supported by declaration, which makes clear that Plaintiff has no equitable interest in particular restrained assets, as they are not the proceeds of the allegedly infringing activity. Micnerski, 2002 WL 31415753, at *1 ("federal district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed"). Defendants have more than $150,779.55 frozen in their accounts compared to a total revenue and maximum equitable award of $22.59 from sales of the allegedly infringing products. Qu Decl. at ¶ 4, 6, Exhibits A and D. There is no basis for including amounts in these Defendants' accounts beyond these respective dollar amounts, and the asset restraint should be reduced to, at most, each Defendants' respective revenue from sales of the accused products (which is the maximum equitable award Plaintiff may possibly obtain, since revenue necessarily exceeds

profit). tinyBuild, LLC, 24-cv-02413 Dkt. 26 (finding that Plaintiff had not met its burden of establishing that it was entitled to a prejudgment asset restraint on all funds in defendants accounts where Plaintiff had received expedited discovery from the platforms on defendants' sales and reducing prejudgment asset restraint to a number closer to the revenue amounts provided by the Amazon platform to Plaintiff); Innovation Indus., 2025 WL 2996794 at *4 (reducing asset restraint to the gross revenue defendants received from sale of the accused products since "gross revenue can at least establish an upper limit to a potential accounting of profits remedy, since gross revenue necessarily exceeds profit."); Skechers U.S.A., Inc. II v. Partnerships & Unincorporated Associations, 2025 WL 1455801 at *3 (N.D. Ill. Mar. 10, 2025) (noting that "having reflected on the propriety of asset restraints in 'Schedule A' cases generally, the Court finds that the restraint of 'any money or other of Defendants' assets' is overly broad" and noting that "the Court will amend its preliminary injunction order to tie the amount of the asset restraint to the defendants' profits from sales of the accused products.").

## III.  Conclusion

With the benefit of adversary briefing, the Court can now see Plaintiff's patent is vulnerable to being invalidated and that Defendants are not subject to the personal jurisdiction of this Court, thus this Court cannot issue a valid preliminary injunction against Defendants and they should be dismissed under Rule 12(b)(2). Additionally, at a minimum, any asset restraint entered by this Court should be reduced to the equitable remedy Plaintiff may recover in this action and the excess funds should be released from the asset restraint.

Dated this February 5, 2026

Respectfully Submitted,

/s/Adam E. Urbanczyk
Adam E. Urbanczyk
AU LLC
444 W. Lake St., 17th Floor
Chicago, IL 60606

24

(312) 715-7312
adamu@au-llc.com
*Counsel for Defendants*